Jacob Smith ao#41666
700 Conley Lake Road
Deer Lodge, Mt. 59722

appearing pro se

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

JACOB SMITH,

    Plaintiff/
    Applicant,

vs.

BUTTE PRE-RELEASE CENTER and
MIKE THATCHER, BOARD OF
PARDONS AND PAROLE and
MEMBERS IN THEIR OFFICIAL
CAPACITY, DEPARTMENT OF
CORRECTIONS and DIRECTOR
REGINALD MICHAEL IN HIS
OFFICIAL CAPACITY,

    Defendants/
    Respondents.

Case No. 6:20-cv-00018-BMM-JTJ

SECOND AMENDED 42 U.S.C. §1983

APPLICATION FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Plaintiff's claims are brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, the Rehabilitation Act (RA), 29 U.S.C. §794, and this Court has jurisdiction under the Ex parte Young doctrine.

2. Declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202, as well as Federal Rule of Civil Procedure 65.

3. This Court has jurisdiction over plaintiffs claims of federal constitutional rights under 42 U.S.C. §1331. The Defendants acted under color of state law, or by contract, and are being sued in their individual and official capacity.

1

PRELIMINARY STATEMENT

4. Smith appeared before the Montana Board of Pardons and Parole (BOPP) on April 22, 2020. The BOPP denied Smith a parole and endorsed him for inmate worker in a pre-release program.

5. At the 2020 BOPP hearing Smith provided medical records and testimony concerning a chronic knee disability called 'brisitis'. Smith explained that he would not be capable of performing the requisite physical labor of an inmate worker or what would be required in the program.

6. Subsequent to the hearing, Dr. Rees disclosed another knee issue called 'osteoarthritis'. Dr. Rees concealed that information prior to the hearing. Smith filed a request for a new hearing based upon the concealed diagnosis and for violating ADA rights. The BOPP has refused to respond to Smith's formal requests which were timely.

7. As the recent ruling, and denial, by the BOPP indicates; Smith is condemned to incarceration in prison only because he suffers from two diagnosed physical disabilities.

8. Smith inquired of BOPP member Ronald Bell as follows; "If I am denied by pre-release (because of a medical condition) what then?" Mr. Bell responded with, "We'll see you in a year."

9. When Smith presented his medical issues to the BOPP, BOPP member Kristina Lucero responded with, "This is not a medical parole hearing."

10. Smith is approved for Butte pre-release, however, Butte pre-release makes no accomodations for people with disabilities, impairments, or handicaps. The housing unit is located on the second floor and up a steep flight of stairs. Further, any participant is immediately violated and returned to prison in the event that they cannot perform physical labor, including walking across town to work and back.

DISCUSSION

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. §12132 (1994); Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997). To state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwisw qualified to participate in or receive benefits of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Weinreich, 114 F.3d at 978.

With respect to the first element, the ADA defines "disability" as:
(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such impairment; or
(C) being regarded as having such an impairment.

Smith has a record of chronic knee brisitis with effusions in both sides. Also, osteoarthritis in both knees.

Smith cannot stand or walk for long periods of time without extreme pain and suffering. There are times when he cannot walk at all. He cannot lift any amount of weight or exert any force through his legs. Brisitis and osteoarthritis are considered as medical disabilities causing impairment and limits on basic life activities. (See exhibits 1-7)

With respect to the second element of disability discrimination, plaintiff alleges that he is statutorily eligible for parole. As a result, plaintiff pleads that he is otherwise qualified for the public benefit he seeks, consideration for parole.

With respect to the third and forth elements, plaintiff alleges that he has been denied the benefit of a public program or activity--consideration for parole--by reason of his disability.

Examining whehter parole hearings are public programs or activites covered by the ADA, it has been concluded that they are.

Circuit courts have long held that parole boards may not exclude an inmate from consideration for parole based on race. See, e.g., White v. Bond, 720 F.2d 1002, 1003 (8th Cir. 1983); Candelaria v. Griffin, 641 F.2d 868, 870 (10th Cir. 1981). Although these cases of racial discrimination were based dircetly on conatitutional violations while this case is based on a violation of the ADA, Congress passed the ADA to enforce similar constitutional promises of equal protection. This court has noted:

> "If a prison may not exclude blacks from the prison dining hall and force them to eat in their cells, and if Congress thinks that discrimination against a blind person is like discriminating against a black person," the prison may not exclude the blind person from the dining hall unless allowing him access would unduly burden prison administration.

Armstrong I, 124 F.3d at 1025 (quoting Crawford v. Indiana Dep't of Corrections, 115 F.3d 481, 486 (7th Cir. 1997)). Concluding that Congress did in fact liken disability discrimination to racial discrimination, the Ninth Circuit held that the ADA applies to state correctional systems. Id.

The same holds true in the parole context: since a parole board may

4

not categorically exclude African-Americans from consideration for parole because of thei race, and since Congress thinks that discrimination against a diabled person is like discriminating against an African-American, the parole board may not categorically exclude disabled people from consideration for parole because of their disability. Thompson v. Davis, 295 F.3d 890 (9th Cir. 2002).

The fact that considerating a prisoner for parole is a substantive, criminal law decision does not license the decision-maker to discriminate on impermissible grounds. Id.

Finally, the plain language of the ADA extends its anti-discrimination guarantees to the parole context. Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefit of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. §12132. Like state prisons, state parole boards "fall squarely within the statutory definition of 'public entity', which includes 'any department, agency, special purpose district, ot other instrumentality of a State or States local government.'" Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 141 L.Ed.2d 215, 118 S.Ct. 1952 (1998)(quoting 42 U.S.C. §12131(1)(B)).

The Ninth Circiut found that prison "programs or activities" include such things as parole and disciplinary hearings. See Armstrong I, 124 F.3d at 1024, and Armstrong IIm 275 F.3d at 856(collectively making clear that parole proceedings are "programs or activities" within the meaning of the ADA); Duffy v. Riveland, 98 F.3d 447, 455 (9th Cir. 1996). In addition, they have interpreted Title II's "programs" and

5

"activities" to include "all of the operations of a qualifying local government." Bay Area Addiction Research and Treatment, Inc. v. City of Antioch, 179 F.3d 725, 731 (9th Cir. 1999). In reaching this conclusion, the Ninth Circuit noted that the legislative history of the ADA "strongly suggests that §12132 should not be construed to allow the creation of spheres in which public entities may discriminate on the basis of an individuals's disability." Id. They also found that Congress specifically rejected an approach that could have left room for exceptions to §12132's prohibition on discrimination by public entities. Id. at 732.

Given the breadth of the statute's language, parole proceedings constitute an activity of a public entity that falls within the ADA's reach.

The Ninth Circuit followed the words of the Tenth Circuit, "a broad rule categorically excluding" parole decisions "from the scope of Title II is not the law." Gohier v. Enright, 186 F.3d 1216, 1221 (10th Cir. 1999)

SMith is seeking "non-discriminatory treatment in residential placements". :Rights against discrimination are among the few rights that prisoners do not park at the prison gates." Crawford v. Indiana Dep't of Corrections, 115 F.3d 481 (7th Cir. 1997)(citing Turner v. Safley, 482 U.S. 78, 84, 96 L.Ed.2d 64, 107 S. Ct. 2254 (1987)). Thus the Ninth Circuit held, "based on the plain meaning of the statutes, that the ADA and RA apply to inmates and parolees in the state correctional system and affirmed the district court's application of these statutes in entering the injunction."

THE DEFENDANTS ARE NOT PROTECTED BY IMMUNITY:

The Ninth Circuit held that the exception to Eleventh Amendment immunity set forth in Ex parte Young, 209 U.S. 123, 52 L.Ed. 714, 28 S. Ct. 441 (1908), squarely applies to allow this action against named individuals in their official capacity.

Under the doctrine of Ex parte Young, the Eleventh Amendment is no bar to "federal jursidiction over suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'" Seminole Tribev. Florida, 517 U.S. 44, 134 L. Ed. 2d 252, 116 S. Ct. 1114, 1132 (1996). "The Young doctrine rests on the premise that a suit against a state official to enjoin an ongoing violation of federal law is not a suit against the state." Idaho v. Coeur d' Alene Tribe, 138 L. Ed. 2d 438, 117 S. Ct. 2028, 2047 (1997); See also Papasan v. Allain, 478 U.S. 2932(1986).

As sovereign immunity presents no bar to suit against state officials seeking prospective injunctive relief against ongoing violations of the ADA and RA, neither should absolute immunity protect to Board of Pardons and Parole.

Because the Ninth Circuit concluded that the ADA and RA applies to inmates and parolees in the state penal system and that suit may proceed in federal court under the doctrine of Ex parte Young, this case should also proceed past the screening process and be litigated further.

The key factor is whether the relief sought is prospective, to remedy a continuing violation of federal law. The federal court may enjoin state officials from continuing such activity. United Mexican States v. Woods, 126 F.3d 1220, 1222 (9th Cir. 1997).

Wilkinson held that the plaintiffs could seek a prospective

7

injunction compelling the state to comply with constitutional requirements in parole proceedings in the future. Wilkinson v. Dotson at 82.

Plaintiff is still entitled tp pursue his claims for Declaratory Relief. See Corliss v. O'Brien, 200 Fed. Appx. 80, 2006 WL 2686644, *3 (3rd Cir. 2006)(the 1996 amendment does not alter case law regarding the availability of declaratory relief against judicial officers)(citing Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, 197-98 (3rd Cir. 2000); Haas v. Wisconsin, 109 Fed. Appx. 107, 114, n.8, 2004 WL 1799360, 6(7th Cir. 2004)(§1983 allows claims for declaratory relief); Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000)(the 1996 amendment limits the relief available to declaratory relief).

The DJA, 28 U.S.C.S. §2201, expressly provides that in a case of actual contraversy within its jurisdiction any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. "Actual Controversy means "whehter the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgement. Golden v. Zwickler, 394 U.S. 103, 108, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969).

Federal Courts have "unique and substantial discretion in deciding whether to declare the rights of litigants" under the DJA. Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995).

The Second Circuit Court of Appeals established prudential factors in determining whether to exercise their discretion to consider declaratory judgement action. 1) whether the judgement will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgement woulf finalize the contaversy and offer relief from incertainty; (3) whether the propsed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgement would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy. New York v. Solvent Chem. Co., Inc., 664 F.3d 22, 26 (2nd Cir. 2011).

Smith is seeking as relief in this action a Declaratory Judgement by the Court stating that the defendants have violated the rights of Smith as defined under the Americans with Disabilities Act and the Rehabilitation Act. This Court has the discretion to declare the rights of Smith in this case of controversy established by what is clearly adverse legal interests which occurred, is occurring, and will continue to occur without Court intervention by declaration and injunction.

Smith reiterates, he cannot perform physical labor required by Butte pre-release due solely to documented disability and impairment. Smith must remain incarcerated in prison unless and until this Court grants the relief sought.

BUTTE PRE-RELEASE CENTER IS VIOLATING ADA and RA:

The Butte pre-release center is violating the Americans with Disabilities Act (ADAO, 42 U.S.C. §§12131-12134, and the Rehabilitation Act of 1973 (RA), 29 U.S.C. §794, by failing to reasonably accomodate Smith's disability.

Smith sent letters to the Butte pre-release wherein he described his disability and requested guidance. Butte refused to respond and continues to promote Smith into the program without accomodations. Smith cannot walk or stand for long periods of time without experiencing extreme pain.

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of diability in regard to...[the] privileges of employment." 42 U.S.C. §12112(a).

The ADA defines an "employee" as "an individual employed by an employer." 42 U.S.C. §12111(4). It cannot br argued that an inmate worker designated to physical labor positions at pre-release is not qualify under the ADA definition.

The "general rule" the Ninth Circuit Court of Appeals considers is the "economic reality" of a labor relationship when determining whether an employments relationship exists under federal law. Hale v. Arizons, 993 F.2d 1393 (9th Cir. 1993). The Ninth typically evaluates the "economic reality" of a labor relationship by considering the factors laid out in Bonnette v. California Health and Welfare Agency, 704 F.2d 1465 (9th Cir. 1982). While employed by Butte pre-release Smith is still an "inmate", and although the Bonnette factors identifies the relationship between worker and entity for which work is performed lies in the relationship between prison and prisoner

10

and identifies the work as penological, not pecuniary, Smith receives payment by the pre-release and physical labor is mandatory.

The Ninth Circuit held in Hale that "where an inmate is obligated to work at some job pursuant to a prison work program, that fact alone brings him within the rule". Hale at 1265.

The Butte pre-release center is contracted by the Montana Department of Corrections. The BOPP is administratively tied to MDOC by Mont.C.Ann.

Title II's obligations apply to public entities regardless of how those entities chose to provide or operate their programs and benefits. Armstrong v. Schwarzenegger, 622 F.3d 1065 (9th Cir. 2010). A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, discriminate against individuals with disabilities.

MDOC contracts pre-release to provide "benefits" to state inmates, including paid labor. As the Ninth Circuit suggested in Castle v. Eurofresh, Inc., 731 F.3d 901, "The State defendants are free to enter into such contracts, and likely reap numerous benefits from such arrangements. But one benefit State defendants may not harvest is immunity for ADA violations: State Defendants are obligated to ensure Eurofresh--like all other State contractors--complies with federal laws prohibiting discrimination on the basis of disability. See Armstrong, 622 F.3d ay 1065-67; see also Henrietta D. v. Bloomberg, 331 F.3d 261 286 (2nd Cir. 2003)(All governmental activities of public entities are covered, even if they are carried out by contractors). The same principle applies to RA violations committed by contractors. Henrietta D., 331 F.3d at 286.

The ADA and RA, as enforced through the Attorney General's regulations promulgated under the ADA, see 42 U.S.C. §12134(a), require more than compliance with due process requirements; they require that a disabled individual be provided with "meaningful acces to state provided services and set forth a number of detailed requirements that must be met. See Alexander v. Choate, 469 U.S. 287, 295, 83 L. Ed. 2d 661, 105 S. Ct. 712 (1985); see also Crowder v. Kitagawa, 81 F.3d 1480, 1484 (9th Cir. 1996).

The Board of Pardons and Parole's written policy does not consider the particular needs of disabled prisoners and parolees. In fact, the BOPP in Smith's hearing refused to even hear his medically documented disabilities and stated, "This is not a medical parole hearing."

Medical Parole Administrative Rule 20.25.307 provides as follows:
(4)(b) the offender has a medical condition that requires extensive
    medical attention or the offender suffers from medical
    condition that will likely cause his death within six months.

Smith's chronic knee brisitis and osteoarthritis would not rise to the level constituted under the A.R.M. policy.

ACTUAL INJURY:

Smith is injured by the BOPP's policies and practices relating to its non-medical parole hearings. Smith is subjected to discriminatory treatment on account of his diability in violation of both the ADA and RA. This treatment is sufficient to constitute an actual injury. See Armstrong v. Davis, 275 F.3d 849.

Montana statute does not create a fourteenth amendment due process right to a BOPP hearing. However, following Ellis v. District of Columbia, 318 U.S. App. D.C. 39, 84 F.3d 1413, 1418 (D.C. Cir. 1996) (holding that, until Supreme Court speaks more directly to the issue, prisoners' right to pre-release revocation hearing unaffected by holding in Sandin v. Conner, 515 U.S. 472, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995)), we hold that the statute is sufficiently determinate to require such hearings as a matter of constitutional right. Thus, we need not find a constitutional violation to establish actual injury under ADA and the RA. In addition to prohibiting discriminatory treatment, those statutes prohibit defendants from denying plaintiffs "the benefits of [their] services, programs, or activities." Here, under the facts, Smith was denied such benefits by virtue of the BOPP's failure to consider disabilities, impairments, or handicaps which are not accomodated by any pre-release in the State of Montana.


PRISON LITIGATION REFORM ACT:

In determining the scope of injunctive relief that interferes with the affairs of a state agency, the court must ensure, out of federlism concerns, that the injunction "heels close to the identified violation," Gilmore v. California, 220 F.3d 987, 1005 (9th Cir. 2000)(citation omitted), and is not overly "intrusive and unworkable...[and] would

not require for its enforcement the continuous supervision by the federal court over the conduct of [state officers]." O'Shea, 414 U.S. at 500, 501. These concerns have been codified in the Prison Litigation Reform Act, 18 U.S.C. §3626 (PLRA). See Gomez v. Vernon, 255 F.3d 1118, 1129 (9th Cir. 2001)(PLRA "has not substantially changed the threshold findings and standars required to justify an injunction.").

U.S.C. §1983 IS PROPER VEHICLE FOR THIS ACTION:

The Ninth Circuit Court of Appeals held that a plaintiff's ADA claim "does not necessarily imply the invalidity of their continuing confinement." Bogavich v. Sandoval, 189 F.3d 999, 1004 (9th Cir. 1999).

To state a claim under §1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

In a recent unpublished decision, the Ninth Circuit reversed the dismissal of a prisoner's §1983 complaint alleging "due process nd equal protection violations in connection with his parole hearing." Erler v. Bisbee, 616 F.App'x 235 (9th Cir. Sept. 3, 2015). "Because Erler sought a new parole hearing and not immediate or speedier release, success in this action would not necessarily demonstrate the invalidity of Erler's continued confinement or its duration." Id. (citing Wilkinson v. Dotson, 544 U.S. 74, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005). See also Casadus v. Board of Parole Hearings, No. 16-2441-JAK-SK, 2017 Dist. LEXIS 90943 at *3-4, 2017 WL 2541397 at *1-2 (C.D. Cal June 12, 2017).

PROPRIETY OF INJUNCTION:

Turner v. Safley holds that "when a prisonn regulation impinges upon inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89.

Here, plaintiff presents policies and regulations of a state parole board which apply both to plaintiff as a prisoner and as a inmate worker at pre-release. Plaintiff Smith is approved by the Butte pre-release center, however, he has not been provided the requisite medical physical by the Montana State Prison medical providers mandated to provide a physical by the Montana Department of Corrections medical division required for all inmate workers. Additionally, MDOC has neglected to assess Plaintiff Smith's chronic disability pursuant to 37-1-331, MCA, Correctional health car review team.

In fact, MPS medical providers have, for two years, refused to provide Smith with a consultation with an orthopedic physician. Smith has complainedof, and sought treatment for, chronic swelling, extreme pain, and immobility for over two years. (See Exhibits

The first, and only, time that any treatment was provided by MSP medical providers was in November of 2019, when Dr. Rees drained large amounts of fluid from both of Smith's knees. Within two weeks of the draining procedure Smith's knees were again swollen and again Smith has sought medical treatment without response for 9 months.

This court must determine whether there is a "valid, rational connection between the prison regulations and the legitimate governmental interest put forward to justify it." Turner, 482 U.S. at 90.

15

To satisfy Turner, the Board must, at the very least, adduce some penological reason for its policy at the relevant stage of the judicial proceedings. See Armstron v. Davis, 275 F.3d 849 (9th Cir. 2001). "Considerations adavanced to support a restrictive policy [must] be...sufficiently articulated to permit meaningful...review." Walker v. Sumner, 917 F.2d 382, 386 (9th Cir. 1990). The Ninth Circuit aggreed with the Seventh Circuit that prison authirities "cannot avoid court scrutiny [under Turner] by reflexive, rote assertions." Shimer v. Washington, 100 F.3d 506, 510 (7th Cir. 1996).

Because the regulations implementing the ADA require a public entity to accomodate individuals it has identified as disabled, 28 C.F.R. §35.104, some form of tracking system is necessary in ordere to enable the Defendants to comply with the act.

The Defendants must evaluate pre-release facilities in accordance with 28 C.F.R. §25.150(d) and provide lists of all facilities that are not fully accomodating to the disabled.

To enforce 28 C.F.R. §35.130(b)(1), which prohibits state entities from avoiding compliance with the act by delegating their services "through contractual, licensing, or other agreements", ADA training is required.

This court should scrutinize the requests for relief and adjust them with regard to any unworkable burdens upon the Defendants.

## PRAYER FOR RELIEF

Wherefore, Smith prays that this Court issue its order granting the following relief:

1. A judgement declaring that the Defendants have violated the rights of Jacob Smith under the ADA and RA.

2. An order requiring the Montana Department of Correction, and the Board of Pardons and Parole, to evaluate all pre-release centers under contract with the State of Montana to determine which facilities are not accomodating to disabled offenders and to make a list of those facilities not in compliance with administrative ADA regulations.

3. An order requiring the Department to identify disabled inmates and create some form of tracking system to enable the Department to comply with the ADA.

4. An order requiring the Department and BOPP to provide ADA trained members and officials who are directly involved in parole eligibility and determinations.

5. An order requiring the Butte pre-release center to provide disability accomodations in compliance with the ADA and to publish a description of any structural modifications which accomodate disabilities.

6. An order enjoining the BOPP to provide Jacob Smith a new parole hearing or a new parole consideration.

7. An order requiring the MDOC and BOPP to evaluate their policies and procedures as mandated by the ADA and propose new policies and procedures to bring them into compliance with the ADA.

DATED this 5 day of August 2020.

_____
Jacob Smith