ROGER RENVILLE
Special Assistant Attorney General
Montana Department of Corrections
5 South Last Chance Gulch
P.O. Box 201301
Helena, MT 59620-1301
Phone - (406) 444-9593
Fax - (406) 444-4902
roger.renville@mt.gov

Attorney for Defendant Michael

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JACOB SMITH,<br><br>Plaintiff,<br><br>v.<br><br>BUTTE PRE-RELEASE CENTER AND MIKE THATCHER, BOARD OF PARDONS AND PAROLE and MEMBERS IN THEIR OFFICIAL CAPACITY, DEPARTMENT OF CORRECTIONS and DIRECTOR REGINALD MICHAEL IN HIS OFFICIAL CAPACITY,<br><br>Defendants. | Case No. CV 20-00007-BMM-JTJ<br><br>**BRIEF IN SUPPORT OF DEFENDANT MICHAEL'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)** |

(This space intentionally left blank.)

Defendant Reginal Michael, Director of the Montana Department of Corrections, moves to dismiss for lack of subject matter jurisdiction. Plaintiff Jacob Smith by his own choice has never completed the process to become an inmate worker at the Butte Prerelease Center ("BPRC"). Plaintiff has never requested an accommodation for a disability at the BPRC. Until Plaintiff completes the inmate worker referral and application process, accepts a work assignment at the BPRC, and makes a request for an accommodation this is denied, he has not presented a live issue to the Court. Plaintiff has deprived the Court of subject matter jurisdiction.

## LEGAL STANDARD

As the party seeking to invoke the federal court's jurisdiction, Plaintiff has the burden of alleging specific facts to prove standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Schmier v. U.S. Court of Appeals*, 279 F.3d 817, 821 (9th Cir. 2002). Where a party lacks standing, Rule 12(b)(1) allows a party to move for dismissal based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of demonstrating standing "for each claim" and "for each form of relief" sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (internal citations and quotations omitted).

In deciding a Rule 12(b)(1) motion, the court may consider materials beyond the pleadings when a defendant makes a factual challenge to subject matter

jurisdiction, as Director Michael does here. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Accordingly, evidence that goes to the court's subject matter jurisdiction may be submitted and considered when deciding a Rule 12(b)(1) motion. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court.") (citations and internal quotation marks omitted).

## FACTUAL ALLEGATIONS

Plaintiff Smith ("Smith") is an inmate at the Montana State Prison ("MSP"). Smith appeared and was denied parole at a hearing before the Montana Board of Pardons and Parole ("BOPP" or "Board") on April 22, 2020. (Compl. ¶ 4, Doc. 15.) The BOPP recommended that Smith complete Level 3.5 Chemical Dependency treatment and then apply to become an inmate worker at a prerelease center. (Johnson Aff. ¶ 25.) Smith completed treatment during the summer of 2020. However, Smith has declined to complete the referral and application process for a work assignment to the Butte Prerelease Center ("BPRC") and consequently has not been assigned there. (*Id.*, ¶ 53.) Smith has not worked at the prerelease center, has not requested an accommodation as an inmate worker there, and has not been denied an accommodation.

On April 22, 2020, Smith appeared before the BOPP for a parole hearing. (Compl. ¶ 4, Doc. 15.) The Board denied parole. (*Id*.) The Board endorsed Smith to complete Level 3.5 Chemical Dependency treatment and to apply to a prerelease center for an extended stay residency or an inmate worker assignment. (Johnson Aff. ¶ 25.)

An MSP inmate endorsed by the Board to be an inmate worker at a prerelease center must be referred to the Inmate Worker program by an MSP case manager or an Institutional Probation and Parole Officer ("IPPO"). (Johnson Aff. ¶ 17.) An IPPO then oversees the process of executing the referral. (*Id*., ¶¶ 17-21.) The referral is first screened by a committee that includes the prerelease for basic inmate eligibility requirements. (*Id*., ¶17.) If a prerelease center approves the referral at screening, the IPPO then obtains information and signatures on three forms: a *Medical Information* form completed by the inmate and MSP Infirmary staff; a *Work Position Agreement* signed by the inmate and prerelease staff; and an *Inmate Worker Request Form* signed the by the IPPO and a prerelease Administrator. (*Id*., ¶ 20.) The referral must then be approved by a Department of Corrections ("DOC") Prerelease Contract Manager and reviewed for medical clearance by the DOC Clinical Services Division. (*Id*., ¶¶ 19, 20.) Only upon those final approvals can the IPPO schedule the inmate to be transferred to the prerelease center for the (usually) 180-day work assignment. (*Id*., ¶ 21.)

On April 23, 2020, IPPO Cathy Johnson contacted the BPRC to inform the prerelease center of the Board's endorsements and ask whether the BPRC would consider Smith for an extended stay or for an inmate work assignment when Smith completed chemical dependency treatment. (Johnson Aff. ¶ 26.) BPRC Administrative Assistant Nicole Bugni replied that the BPRC "will only take him as an inmate worker." (*Id*.) Bugni asked Johnson to keep the BPRC posted regarding Smith. (*Id*.)

On April 28, 2020, Smith wrote to Johnson in an *Offender/Staff Request* (*OSR*) and asked, "Do I need to reapply for prerelease since its [sic] been 18 months since my Butte application was approved?" (Johnson Aff. ¶ 28.) If so, Smith wrote, he would need Johnson's help to apply. (*Id*.)

Smith was referring to an application for the Inmate Worker program that he had begun after being denied parole in October 2018. Smith had signed up for chemical dependency treatment that was scheduled to begin in January 2019 and Johnson had referred Smith to the Inmate Worker program for a work assignment that would that would follow his treatment programming. (Johnson Aff. ¶ 23.) Smith's referral to the Inmate Worker program was approved at the screening stage by the BPRC in December 2018. (*Id*.) However, Smith then declined to go to treatment and his application to be an inmate worker was left in limbo, only approved at screening by the prerelease but not processed, reviewed or approved

further. (*Id*.)

Johnson responded to Smith on May 4, 2020, writing that "it sounds like Butte is still willing to take you as an inmate worker followed by resident after you completed a level 3.5 CD treatment program." (Johnson Aff. ¶ 29.)

In subsequent *OSR*'s and responses from May through August 2020, IPPO Johnson advised Smith of the process necessary to complete the referral to the Inmate Worker program and obtain a work assignment to the prerelease center. Johnson advised Smith that she would start the paperwork for processing his referral to the prerelease as an inmate worker when he was showed progress toward completion of treatment. (Johnson Aff. ¶ 31.) Johnson explained that the process would include obtaining an updated medical clearance from the MSP Infirmary, which would be sent to the BPRC for review. (*Id*., ¶¶ 31, 33, 37.) Johnson explained that the medical information would also be reviewed by the DOC Clinical Services Division in Helena for a medical clearance. (*Id*., ¶ 31.)

Smith began CD-ITU treatment at MSP on May 5, 2020. Smith completed the treatment program on August 5, 2020. (Johnson Aff. ¶ 38.)

On August 10, 2020, Smith filed a Motion for Leave to File Second Amended Complaint (Doc. 12). This Court granted Smith's Motion and Smith's Second Amended Complaint was filed on August 12, 2020. (Doc. 15.)

On August 17, 2020, Johnson and IPPO Supervisor Ed Foley met with

Brief in Support of Motion to Dismiss,
CV-20-00018-BMM-JTJ                                                                                    Page 6 of 17

Smith to answer some of his *OSR*'s in person and to provide him with Inmate Worker forms for Smith to complete and sign. (Johnson Aff. ¶ 39.)

On August 18, 2020, Smith returned the *Medical Information* form with his section completed and signed. (Johnson Aff. ¶¶ 40, 42.) Smith stated on the form that he had injuries or physical limitations including "knees, bilateral effusions/Bursitis, osteoarthritis, chronic LUTS untreatable." (*Id.*)

Smith returned the *Worker Position Agreement* with both a signature and a statement apparently nullifying the signature. Smith wrote:

> This agreement neglects to describe accommodations required under the Americans with Disabilities Act. Therefore, I cannot sign this contract under the above conditions. See Jacob Smith vs. Mike Thatcher case no. CV 00018-BMM-JTJ.

(Johnson Aff. ¶ 41.)

Johnson submitted Smith's *Medical Information* form to the MSP Infirmary. (Johnson Aff. ¶ 43.) Assistant Director of Nursing Todd Boese completed the form with pertinent medical information from Infirmary records and returned it to Johnson. (*Id.*) Johnson emailed Boese for additional information, specifically asking whether Smith had any work restrictions or limitations and whether Smith could go to a prerelease center as an inmate worker. (*Id.*, ¶¶ 44, ,45, 46.) Boese responded on September 1, 2020, that Smith had many chronic pain issues but no medical hold prohibiting placement in a prerelease. (*Id.*, ¶ 47.)

On September 1, 2020, Johnson submitted the *Medical Information* form

and the *Work Position Agreement* with an *Inmate Worker Request* form to the BPRC for a review and a determination. (Johnson Aff. ¶ 48.) BPRC Program Administrator Jay Grant contacted Johnson to say that the BPRC would not process the application further unless Smith signed the *Worker Position Agreement*. (*Id.*, 49.)

On September 3, 2020, Johnson presented the *Agreement* to Smith again and explained that his application would not be processed without his signature. (Johnson Aff. ¶ 51.) Smith refused to sign and instead wrote that "I'm waiting for results from an orthopedic MRI recommendation before I commit to signing a contractual obligation to work." (*Id.*) Johnson advised Smith to contact her if and when he decided to proceed with the application. (*Id.*, ¶ 52.)

As in 2018, Smith's referral to the Inmate Worker program has been approved at the screening stage but his application is incomplete. (Johnson Aff. ¶ 53.) The referral has not been submitted to the DOC's Contract Manager for approval and has not been submitted to the Clinical Services Division for medical clearance. (*Id.*)

## SUMMARY OF THE ARGUMENT

There is no subject matter jurisdiction over Smith's Complaint for independent reasons. First, Smith lacks standing to assert a claim under the Americans with Disabilities Act (ADA) or the Rehabilitation Act (RA). Smith does

not have an actual injury in fact that can be redressed by this Court. Rather, he speculates that if he ever completes his inmate worker application and is transferred to the BPRC to start a work assignment, he might be denied a reasonable accommodation at the BPRC. This hypothetical legal question is based on speculation.

Second, Smith's ADA and RA claims are not ripe. Smith's claims are based on potential future contingencies that may never arise. Smith guesses that if he were to transfer to the BPRC to take a work assignment, he might request an accommodation for a disability from the BPRC. He further speculates that his request might be denied. The ripeness doctrine prohibits the premature adjudication of legal questions that may never arise.

Third, Smith lacks standing to request the injunctive relief in his Complaint. Smith seeks relief that is systemic, well beyond his limited factual allegations. Smith cannot seek relief regarding facilities in which he does not reside. He cannot ask for relief for other inmates.

## ARGUMENT

### I. There is no Subject Matter Jurisdiction for Smith's Complaint

#### A. Smith Lacks Standing to Assert ADA or RA Claims

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by

alleging an actual case or controversy." *L.A. v. Lyons*, 461 U.S. 95, 101, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

Smith's claim against Director Michael is based entirely on Smith's conclusory allegation that the BPRC, a contract facility providing correctional services for the DOC, "makes no accommodations for people with disabilities, impairments, or handicaps." (Compl. ¶ 10, Doc. 15.) Smith alleges that "the housing unit is located on the second floor and up a steep flight of stairs." (*Id.*) Smith suggests that a work assignment to the BPRC involves "walking across town to work and back." (*Id.*)

Smith factual allegations are false. The BPRC at 68 West Broadway Street in Butte does have a second floor of rooms for residents. (Johnson Aff. ¶ 54.) But the BPRC also has several ADA accessible rooms on the first floor. (*Id.*) Nor must inmate workers walk "across town to work and back." The BPRC places all its

inmate workers in a Food Services assignment and the *Work Position Agreement* that Smith refused to sign was for a Food Services position. (*Id*., ¶ 51.) The BPRC work site for Food Services is a kitchen on the first floor of 111 West Broadway, almost directly across West Broadway Street from the BPRC. (*Id*., ¶ 55.) If and when Smith ever accepts a work assignment to the BPRC, he will have to walk across the street, not "across town," to get to work."

Smith has not accepted a work assignment yet, though. Consequently, he cannot know if he would need an accommodation for a disability. The BPRC has not been his employer and thus it cannot have received, granted, or denied any request for accommodation from Smith as an inmate worker.

Smith has not suffered an injury-in-fact from the BPRC's alleged failure to comply with the ADA and the Rehabilitation Act because he has never been an inmate worker there and only conjectures and hypothesizes about the injury he might suffer if he were an inmate worker.

Nor can Smith cure the lack of standing by finally obtaining an inmate work assignment now. A plaintiff must have standing at the time the lawsuit is filed. *See, e.g.,* F*riends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.,* 120 S. Ct. 693 (2000) ("we have an obligation to assure ourselves that [plaintiff] had Article III standing at the outset of the litigation").

Smith has not met his burden to establish an injury in fact. He lacks standing

and his entire Complaint fails for this reason.

Smith also has not established that Director Michael's conduct caused any alleged injury. The only wrongful conduct that Smith alleges against Director Michael is the DOC's contractual relationship with BPRC. However, there is nothing injurious or wrongful about this relationship because Smith has not established an injury in fact. Likewise, no court decision can remedy a non-injury.

Based on the foregoing, Smith has not established standing to assert an ADA or RA claim. He has not established an injury in fact. He has not established Director Michael's alleged conduct caused any injury. Smith has not shown that a court decision could redress a non-injury. The Court should dismiss Smith's entire complaint for lack of subject matter jurisdiction.

### B. Smith's Claims are Not Ripe

Smith asks the Court to answer hypothetical question: Whether it will violate the ADA or RA if he (1) chooses to become an inmate worker at the BPRC and (2) the BPRC cannot make a reasonable accommodation for an alleged disability.

The "question of ripeness goes to...the subject matter jurisdiction to hear the case." *Shelter Creek Dev. Corp. v. Oxnard*, 838 F.2d 375, 377 (9th Cir. 1988). The doctrine of ripeness is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

"Ripeness is a threshold jurisdictional question; when claims are unripe, the correct disposition is dismissal." *S. Pac. Transp. Co. v. City of L.A.*, 922 F.2d 498, 508 (9th Cir. 1990). A claim is not ripe if it rests on contingent future events that may not occur. *Tex. v. United States*, 523 U.S. 296, 300 (1998).

Smith has not been denied admission to BPRC but neither has he yet accepted a work assignment there. He has not attempted to do the work entailed in the Food Services position. He has not asked his employer for an accommodation for a disability. He has not been denied a reasonable accommodation. Rather, he speculates that (1) if he ever goes to BPRC, (2) he might seek an accommodation, and (3) it might be denied. This is a textbook definition of a claim that rests on contingent future events that may never occur. The Court should not entangle itself in Smith's abstract future hypotheticals.

In sum, Smith's entire Complaint is not ripe. He presents a future hypothetical controversy that is based on contingencies that may never come to pass. The doctrine of ripeness is designed for these circumstances. The Court should dismiss Smith's entire Complaint.

### C. Smith Lacks Standing to Request Injunctive Relief

Smith has requested a broad preliminary injunction, extending beyond his individual cause of action. Smith asks this Court to order the DOC to evaluate all prerelease centers for ADA compliance, to create a system tracking disable

inmates, to train Board members and staff, and to evaluate existing policies and promulgate new policies. (Compl., Doc. 15 at 17.)

There are two components to a standing inquiry when a plaintiff requests prospective equitable relief. *Stevens v. Harper*, 213 F.R.D. 358, 366 (E.D. Cal. 2002). First, a plaintiff must satisfy the constitutional requirements for standing by fulfilling the "case or controversy" requirement of Article III. *Hodgers-Durgin v. De La. Vina*, 199 F.3d 1037, 1041 (9th Cir. 1999). Second, to demonstrate an entitlement to injunctive relief, plaintiff must show a "real or immediate threat that the plaintiffs will be wronged again—a likelihood of substantial and immediate irreparable injury." *See id.* at 1042 (9th Cir. 1999) (internal quotation marks and brackets omitted).

Here, Smith has failed to fulfill the case or controversy requirement of Article III. Smith has also failed to show any real or immediate threat of future injury.

Smith has been endorsed by the Board for inmate worker status for two years without following through to become an inmate worker. (Johnson Aff. ¶¶ 22, 23, 53.) According to his pleading, Smith told the BOPP that "he would not be capable of performing the requisite physical labor of an inmate worker or what would be required in the program." (Compl. ¶ 5, Doc. 15.) Smith's pleading and his actions demonstrate that he is unlikely to test the BPRC's ADA compliance

by putting himself in the position of an inmate worker any time soon.

Smith's allegations of past wrongs against him without a real and immediate threat of repeated injury do not establish standing for injunctive relief. Moreover, alleged isolated do not establish standing to request the kind of "systemwide relief" that Smith requests. *See Lewis v. Casey*, 518 U.S. 343, 359 (1996) (Finding that two instances of injury to inmates caused lack of access to adequate legal assistance were a "patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief.").

Smith's failure to show a likelihood of substantial and immediate irreparable injury is an independent reason his claims for injunctive relief should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Michael respectfully requests that the Court dismiss Plaintiff Smith's Second Amended Complaint and issue judgment accordingly.

DATED this 13th day of October 2020.

/s/ *Roger Renville*
Roger Renville
Special Assistant Attorney General
Attorney for Defendant Director Michael

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Defendant's Brief in Support of Motion to Dismiss is in compliance with L. R. 7.1, in that the word count is not more than 3,210 words excluding caption, certificate of compliance, tables of contents and authorities, exhibit index and certificate of service.

/s/ *Roger Renville*
Roger Renville
Special Assistant Attorney General
Attorney for Defendant Director Michael

# CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I hereby certify that on the 13th day of October a copy of the foregoing was served on the following persons by the following means:

    1/3     CM/ECF
            Hand Delivery
     2      Mail
            Overnight Delivery Service
            Fax
            E-Mail

1. Clerk, U.S. District Court

2. Jacob Smith
   I.D. # 41666
   Montana State Prison
   700 Conley Lake Road
   Deer Lodge, MT 59722

3. Thomas Leonard
   Boone Karlberg, PC
   201 W. Main St., Ste. 300
   Missoula, MT 59807
   Counsel for BPRC and Mike Thatcher

/s/ *Roger Renville*
Roger Renville
Special Assistant Attorney General
Attorney for Defendant