ROGER RENVILLE
Special Assistant Attorney General
Montana Department of Corrections
5 South Last Chance Gulch
P.O. Box 201301
Helena, MT 59620
Phone - (406) 444-9593
Fax - (406) 444-4902
Roger.Renville@mt.gov

*Counsel for Defendant Director Michael*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JACOB SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>BUTTE PRERELEASE CENTER and MIKE THATCHER, BOARD OF PARDONS AND PAROLE and MEMBERS IN THEIR OFFICIAL CAPACITY, DEPARTMENT OF CORRECTIONS and DIRECTOR MICHAEL IN HIS OFFICIAL CAPACITY,<br><br>Defendants. | CV-20-00018- BMM-JTJ<br><br><br>**AFFIDAVIT OF CATHY JOHNSON IN SUPPORT OF DEFENDANT MICHAEL'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)** |

STATE OF MONTANA        )
                                              : ss.
County of Powell              )

I, CATHY JOHNSON, declare under penalty of perjury that the following is true and correct:

1. I am a competent adult citizen of the State of Montana, I am competent to testify, and I have personal knowledge of the following facts.

2. I am not a party to this lawsuit, but I am familiar with the facts involved.

3. Jacob Smith is an inmate at MSP with whom I am personally familiar.

4. I am currently employed by the Montana Department of Corrections (DOC or Department) as an Institutional Probation and Parole Officer (IPPO) at Montana State Prison (MSP).

5. I have been employed by the Department and have held the position of IPPO since 2007.

6. Prior to 2007, I was employed by the Montana Board of Pardons and Parole (BOPP or Board) for fifteen years.

7. As an IPPO, I provide the coordination necessary for the Board of Pardons and Parole, MSP, Probation & Parole Officers, and Prerelease Centers to expedite the transition of inmates from MSP.

8. As an IPPO, I act as a liaison between MSP, the BOPP, the DOC Probation & Parole Division (PPD) and prerelease centers in Billings, Bozeman, Butte, Great Falls, Helena, and Missoula.

9. Prerelease centers are community based correctional facilities operated by non-profit Montana corporations under contract with the DOC. The facilities provide supervision, counseling, assistance in locating employment, life skills training and guidance for probationers, parolees, conditionally paroled inmates and a small number of inmate workers. Prerelease centers function as a component of the correctional system.

10. The DOC operates an Inmate Worker program that places inmates from MSP and other secure facilities on work assignments to prerelease centers and other community corrections facilities.

11. An inmate worker is an offender who upon approval of the PPD, a screening committee, and the BOPP has received a work assignment at a prerelease center or PPD facility, resides at the facility, and is compensated for the work.

12. Inmate work assignments to prerelease centers are voluntary assignments for which an inmate must apply.

13. Prerelease centers provide room and board to inmate workers exempt from the service charges applicable to traditional prerelease program participants. The facilities charge the DOC the daily per diem rates as outlined in the facilities' contracts and pay inmate workers for the work from the per diem at rates ranging from $6 to $12 per day.

14. Inmate workers assigned to prerelease centers are not parolees. Inmate workers are not allowed passes out of the facilities. Inmate workers may only leave the facilities supervised or escorted by facility staff.

15. An inmate worker's length of stay at a facility is typically 180 days.

16. To be eligible to participate in an inmate worker program, an inmate must satisfy several eligibility criteria. Being within 18 months of parole eligibility or discharge, having an endorsement by the Board, having no warrants or detainers, and having no medical restrictions that may conflict with work requirements are just some of the eligibility criteria.

17. An inmate worker assignment requires several levels of review and approval. The inmate worker application process begins with an endorsement by the Board. The inmate may then be referred to the inmate worker program by a case manager or an IPPO. The case manager or IPPO forwards a referral packet of information to a screening committee including a representative of the prerelease center for review and approval or denial.

18. If approved at screening, the application is processed by the IPPO, who collects information and signatures from the inmate, the MSP Infirmary, the prerelease, and from the DOC.

19. The prerelease reviews medical information from the inmate and the MSP Infirmary to ensure all job assignments are in the best interest of the inmate

and the prerelease. The prerelease medical staff and the prerelease director or administrator must approve the application. The final approvals required are by a DOC Prerelease Program Manager and the DOC Clinical Services Division, which reviews for medical clearance.

20. The IPPO documents signatures and information on three forms: a *Medical Information* form, a *Worker Position Agreement*, and an *Inmate Worker Request Form*. Only when the Prerelease Contract Manager and the Clinical Services Division designee have signed off on the *Inmate Worker Request Form* is the application process complete.

21. Finally, upon approval and prior to the inmate worker's transfer to the prerelease center, the IPPO will determine a departure date, arrange for victim notifications, coordinate transportation, and complete other necessary arrangements.

22. I have twice worked with Jacob Smith to refer him to the inmate worker program and each time he has ceased cooperating partway through the process.

23. The first time I worked with Smith on an application for the inmate worker program was in 2018 after the Board of Pardons and Parole denied Smith parole on October 10, 2018 and endorsed Smith to complete the Chemical Dependency-Intensive Treatment Unit (CD-ITU) program and a Prerelease Extended Stay program or Inmate Worker program. Smith signed up to begin treatment and I started a referral for Smith to the inmate worker program so he could

transfer to a prerelease without delay after treatment. Smith's referral packet was approved at screening by the Butte Prerelease Center in December 2018. However, Smith did not attend treatment as scheduled and his application to the Butte Prerelease stalled. The referral did not result in a work assignment for Smith.

24. During the 16 months between January 22, 2019, and April 28, 2020, Smith communicated nothing further to me about his application for an inmate worker assignment to the BPRC.

25. On April 22, 2020, the Board of Pardons and Parole denied Smith parole and endorsed him again for both Level 3.5 chemical dependency treatment and prerelease inmate worker or extended stay resident, which I learned immediately in the course of my duties as an IPPO.

26. On April 23, 2020, I contacted Administrative Assistant Nicole Bugni at the BPRC to inquire whether the BPRC's approval at screening was still valid. I asked her whether the prerelease center would still accept Smith as an extended stay resident or as an inmate worker after he completed chemical dependency treatment. Bugni replied that the BPRC was still willing to take Smith as an inmate worker but would not take him into an extended stay program.

27. Even though the BPRC still approved of Smith's referral, the inmate worker application process would have to be completed and Smith's application approved before a work assignment at the BPRC could be offered to Smith.

28. On April 28, 2020, Smith wrote an *Offender/Staff Request* (*OSR*) to me asking, "Do I need to reapply for prerelease since its been 18 months since my Butte application was approved?" Smith asked me to help him re-apply if he had to do so.

29. On May 4, 2020, I responded to Smith's *OSR* and advised him that "[i]t sounds like Butte is still willing to take you as an inmate worker followed by resident after you have completed a level 3.5 CD treatment program." In my response, I asked whether he intended to get treatment in CD-ITU or at CCP. Smith did not respond to my question.

30. On May 9, 2020, Smith wrote an *OSR* to me and stated that since being accepted as an inmate worker at the BPRC in 2018 he had developed two chronic medical issues. Smith asked what would happen if he went to the prerelease center and could not fulfill the duties required. Smith also asked whether the BPRC should be made aware of his medical issues.

31. On May 28, 2020, I responded to Smith's *OSR*. I advised him that when he showed progress toward getting treatment, we would get started on the paperwork for an inmate worker assignment to the BPRC. I advised him that the process would include obtaining updated medical information from the MSP Infirmary, which would be sent to the BPRC with the other paperwork for review. I advised him that the medical information would also be reviewed by the DOC Clinical Services Division.

32. On July 6, 2020, Smith wrote an *OSR* to me and stated that I was "failing to provide me [Smith] with a pre-release application which the Butte prerelease is entitled to review based upon current medical information."

33. On July 21, 2020, I responded to Smith's *OSR*.

> Mr. Smith: a new prerelease app is not required—I already verified with BPRC that your approval there is still valid and I also confirmed they are not willing to take you any way except as an inmate worker first. As I indicated previously though, none of that can happen until you are in CD-ITU and showing progress. Are you in ITU? If so, the next step in the process is the inmate worker paperwork. I have attached the forms for you to complete. As I explained earlier, part of that process involves input from MSP Infirmary staff and I will get that as soon as I have the completed forms back from you.

34. I attached to my response on July 21, 2020, an *Inmate Worker Medical Information* form and a blank *Work Position Agreement* for Smith to complete and return to me.

35. On July 25, Smith wrote an *OSR* to me requesting copies of his prior *OSR*'s. He still had not answered my repeated question whether he intended to complete treatment and he still had not returned the forms I sent on July 21, 2020.

36. On July 26, 2020, Smith wrote an *OSR* to IPPO Supervisor Ed Foley claiming that Smith had not received the paperwork I sent to him. Smith also advised, for the first time, that Smith was currently participating in the CD-ITU program and would graduate from treatment the following week.

37. On July 30, 2020, I confirmed with prison staff that Smith was participating in the treatment program and then I responded to Smith's July 25 *OSR*.

> Mr. Smith: Attached are copies of all the *OSR*'s I have received from you. I received confirmation today that you are scheduled to complete ITU on 8-5-20. Have you completed the inmate worker forms I sent you on 7-21? I need those back before we can move on to the next step, which is getting input from MSP Infirmary staff. Please complete and return those to me as soon as possible, if you have not done so already.

38. On August 12, 2020, I confirmed with MSP staff that Smith had completed the CD-ITU program on August 5.

39. On August 17, 2020, IPPO Supervisor Ed Foley and I met with Smith. Smith still had not returned the *Medical Information* form and the *Work Position Agreement* that I sent to him on July 21, so at that meeting I provided Smith another set of the two forms to complete and return to me.

40. On August 18, 2020, I received the completed forms back from Smith.

41. On the *Work Position Agreement* Smith had placed his signature but had also written:

> This agreement neglects to describe accommodations required under the Americans with Disabilities Act. Therefore, I cannot sign this contract under the above conditions. See Jacob Smith v. Mike Thatcher case no. cv-00018-BMM-JTJ.

42. On the *Medical Information* form, in response to the question whether he had any injuries or physical limitations, Smith checked "Yes" and wrote, "knees, bilateral effusions/bursitis, osteoarthritis, chronic LUTS untreatable."

43. On August 19, 2020, I submitted the *Medical Information* form to the MSP Infirmary and received it back from Assistant Director of Nursing Todd Boese on August 20, 2020. Boese also provided an *Institutional Transfer Form* summarizing Smith's current medical status to facilitate a continuity of care between the MSP Infirmary and the BPRC. On both documents Boese noted that Smith had a pending appointment for an orthopedic consultation.

44. On August 20, 2020, I emailed Boese asking him to clarify whether Smith had any work restrictions or limitations.

45. On August 20, 2020, Boese replied that any existing restrictions should be listed in the computerized Offender Management Information System (OMIS). Boese added, "However, considering his past treatment certain work could pose concerns."

46. On August 31, 2020, I emailed Boese again noting that no restrictions were listed in OMIS and asking Boese to elaborate on what concerns there might be. I specifically asked Boese if Smith would be okay to go to a prerelease as an inmate worker.

48. On September 1, 2020, Boese replied, "This inmate has many chronic pain issues but there is no medical hold prohibiting placement in a Pre-release." I attached Boese's reply and the *Institutional Transfer Form* summarizing Smith's medical status to Smith's *Medical Information* form and incorporated those by a reference in the "IPPO Comments" section of the form

49. On September 1, 2020, I sent three forms to the BPRC for review: the *Work Position Agreement*, the *Medical Information* form, and an *Inmate Worker Request*.

50. In response, I received an email from BPRC Administrator Jay Grant advising that Smith appeared to be refusing to sign the *Work Position Agreement* and that the BPRC could not review and approve Smith's application materials until Smith signed.

51. Without a signed *Work Position Agreement* and a completed *Request Form,* I could not submit those with the *Medical Information* form to the Contract Manager for approval and to the Clinical Services Division for medical clearance.

52. On September 3, 2020, I presented another copy of a *Work Position Agreement* for a Food Services position to Smith and advised him that his signature was required to advance his application through the process. Smith refused to sign the *Agreement* but did write, "I'm waiting for results from an orthopedic MRI recommendation before I commit to signing a contractual obligation to work."

53. I advised Smith to contact me when he had the information that he needed to make a decision so that I could resume the application process. I have had no contact from Smith since September 3, 2020.

54. The BPRC has approved Smith's referral to the inmate worker program so that he can apply for a work assignment at the BPRC, but Smith has still not completed the inmate worker application process so that the application can be approved or denied by the BPRC and by the DOC. Smith is not an inmate worker with a work assignment at the BPRC.

55. The BPRC is located at 62 West Broadway Street in Butte, Montana. The BPRC has ADA accessible rooms for residents on the first floor and more rooms for residents on the second floor.

56. The work site for inmate workers assigned to work Food Services at the BPRC is a kitchen on the first floor of 111 West Broadway Street in Butte, less than half a block and almost directly across the street from the BPRC.

57. The BPRC performs services for the DOC pursuant to a contract, *Contract 06-052-ACCD*, between the DOC and Community, Counseling, and Correctional Services, Incorporated (CCCS). *Contract 06-052-ACCD* includes a provision requiring CCCS to comply with all applicable federal, state, or local laws, rules and regulations, including the Montana Human Rights Act, the Civil Rights Act of 1964, the Age Discrimination Act of 1975, the Americans with

Disabilities Act of 1990 and ADA Amendments Act of 2008, Section 504 of the Rehabilitation Act of 1973, and Public Law 108-79, the Prison Rape Elimination Act.

DATED this 13th day of October 2020.

_____
CATHY JOHNSON
Deer Lodge, Montana

SUBSCRIBED AND SWORN to before me this 13th day of October, 2020.

(seal)  _____
Signature of Notary Public

DAYNA GILMAN
NOTARY PUBLIC for the
State of Montana
Residing at Garrison, Montana
My Commission Expires
November 09, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I hereby certify that on the 13th day of October a copy of the foregoing was served on the following persons by the following means:

    1/3    CM/ECF
_____ Hand Delivery
     2     Mail
_____ Overnight Delivery Service
_____ Fax
_____ E-Mail

1. Clerk, U.S. District Court

2. Jacob Smith
   I.D. # 41666
   Montana State Prison
   700 Conley Lake Road
   Deer Lodge, MT 59722

3. Thomas Leonard
   Boone Karlberg, PC
   201 W. Main St., Ste. 300
   Missoula, MT 59807
   Counsel for BPRC and Mike Thatcher

/s/ Roger Renville
Roger Renville
Special Assistant Attorney General
Attorney for DOC Director Michael